THE PENNSYLVANIA STEEL COMPANY, Respondent, *v.* TITLE GUARANTEE AND TRUST COMPANY, Appellant, and STAR HOLDING COMPANY et al., Respondents, Impleaded with Others.

1. BUILDING AND LOAN CONTRACT — PRIORITY OF MORTGAGE SECURING SUCH LOAN — SUBSEQUENT ORAL AGREEMENT THAT PRIOR MORTGAGE BE PAID OUT OF LOAN — MECHANIC'S LIEN.   Where a building and loan contract, filed as required by law, provided that the mortgage, to be given. to secure the loan, should be a first mortgage on the premises, not sub-ject to incumbrance; but made no provision for the payment of a prior mortgage, a subsequent oral agreement, that existing incumbrances should be paid out of the loan so as to make the building and loan mort-gage a first mortgage, is not a material modification or variation of the written contract which makes such mortgage subject to a mechanic's lien, subsequently filed against the premises for materials used in the building, under the provisions of the Lien Law (L. 1897, ch. 418, § 21, as amd. by L. 1900, ch. 78, § 1).

2. SAME — FORECLOSURE OF MECHANIC'S LIEN — WHEN JUDGMENT SUBJECTING BUILDING AND LOAN MORTGAGE TO MECHANIC'S LIEN CAN-NOT BE SUSTAINED — ERRONEOUS ASSUMPTION BY LIENORS.   Where, in an action to foreclose the mechanic's lien, a judgment has been rendered, declaring the building and loan mortgage subject to such lien, it cannot be sustained upon the ground that, because the loan contract was silent as to any intended application of the loan to the payment of existing mort-gages, the lienors had the right to assume that the entire loan was to be used for the construction of the building.   Being chargeable with notice of the loan contract, which was duly filed, and with notice of the bor-rowers' title to the premises, the lienors ought to have known that, by the express terms of the contract, the mortgage securing the loan was to be a first lien, "subject to no incumbrance," and that there was a prior mortgage on the property, and that, consequently, the lender was under no obligation to advance any part of the loan until the first mortgage was paid.   The obligation of the lender was conditional, and to make it abso-lute it was necessary to satisfy the first mortgage, and, until this had been done, there could have been no assurance that there would be any fund for the construction of the building.

3. REAL PROPERTY — LIENS AND INCUMBRANCES THEREON — CUSTOM TO PAY SAME OUT OF NEW LOAN — COURT MAY TAKE JUDICIAL NOTICE THEREOF.   The courts may take judicial notice that it is the ordinary and usual practice, when a party makes a loan on real estate, to pay out of the new loan, so far as practicable, existing incumbrances on the prop-

erty, whether mortgages, or taxes and assessments, and also the expenses attendant on the loan, such as the examination of the title, brokerage and the like.

*Penn. Steel Co.* v. *Title Guarantee & Trust Co.,* 120 App. Div. 879, reversed.

(Argued June 11, 1908; decided·October 6, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 17, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward E. Sprague* and *Harold Swain* for appellant. The Lien Law does not purport to regulate the disposition of the proceeds of a building loan. (L. 1897, ch. 418, § 21.) The learned justice at Special Term erred in deciding, as matter of law, that the true agreement between the title company and Forgotston was never filed. (*Thomas* v. *Scutt,* 127 N. Y. 133; *Case* v. *Bridge Co.,* 134 N. Y. 78; *House* v. *Walch,* 144 N. Y. 418; *Stowell* v. *Ins. Co.,* 163 N. Y. 298; *Dady* v. *O'Rourke,* 172 N. Y. 447; *Brantingham* v. *Huff,* 174 N. Y. 53; *Daly* v. *Piza,* 105 App. Div. 496; *Condit* v. *Cowdrey,* 123 N. Y. 463; *Blazy* v. *McLean,* 129 N. Y. 44; *Folinsbee* v. *Sawyer,* 157 N. Y. 196.)

*H. Snowden Marshall* for respondents. The Lien Law does not purport to regulate the disposition of the proceeds of a building loan; but if the borrower and lender in a building loan, as a part of the contract to make the building loan, have contracted for any particular disposition of the proceeds, then that contract must be reduced to writing and filed with the rest of the building loan agreement. (L. 1890, ch. 78, § 21; *A. A. S. & L. Assn.* v. *Campbell,* 43 L. R. A. 622; *Alyea* v. *C. S. Bank,* 12 App. Div. 574.)

Cullen, Ch. J.    In November, 1903, Frederick G. Potter, the owner of certain real estate in the city of New York which

was subject to a mortgage for the sum of $160,000, entered into a contract with one Forgotston for the sale of said realty for the sum of $265,000, to be paid by the assumption of the existing mortgage of $160,000, and by giving a purchase-money mortgage for the remaining $105,000. The contract further provided that the purchaser should erect upon the premises a building of a specified description, and that Potter would obtain for Forgotston a building loan of $370,000, out of which the $160,000 mortgage should be paid; the remainder to be advanced in installments as the building progressed, and that the $105,000 mortgage should be subordinated to the lien of the building loan mortgage. It also provided that the expense of procuring the building loan should be $11,100, to be paid by the purchaser in five equal installments. The contract was consummated and the premises were conveyed to Forgotston, on whose behalf Potter applied to the appellant for a building loan. On August 29th, 1904, Forgotston and the appellant entered into a written agreement whereby the appellant agreed to loan Forgotston the sum of $370,000, $170,000 thereof to be paid "when excavation is completed, sewer into building line and the second tier of iron completed." The remainder of the loan was to be paid in fourteen installments during the construction of the building, the final payment on its completion. The details of these payments are immaterial. For this loan Forgotston was to give his bond secured by a mortgage on the premises, which should be a lien on the premises for all sums advanced, "subject to no incumbrance, except such as may be waived by the lender." Forgotston entered upon the construction of the building. When the first payment on the building loan became due it was made by the appellant in the following manner: $164,785.87 was paid in satisfaction of the first mortgage then on the premises, with interest thereon; a check for $2,220 was given to Forgotston and indorsed by him to Potter and returned by Potter to the appellant, the first installment of the expense of the loan. For the balance a check was given to Forgotston for his own use. Three

additional installments of the loan were paid to Forgotston, a similar deduction of $2,220 being made from each. After the receipt of the last payment Forgotston abandoned the work. In November, 1904, the assignee of the $105,000 mortgage commenced an action to foreclose the same and filed a *lis pendens*. On November 7th, the same year, the plaintiff, who had furnished iron and steel work for the building under a contract with Forgotston, filed a mechanic's lien for the sum of $40,686.95 against the interests of Forgotston, Potter, the assignee of the $105,000 mortgage, and the appellant. The plaintiff was not a party to the foreclosure, for its lien was not filed till after the commencement of that action, nor did it subsequently become a party thereto either on its own application or on that of the other parties. The premises were sold under the foreclosure suit and purchased on behalf of the holder of the mortgage foreclosed. Thereafter the plaintiff brought this action for the foreclosure of its mechanic's lien against all the parties named therein and sought to subject their interests in the property to its lien. It was defeated except as to the defendants Forgotston and the appellant. As to the latter judgment was rendered declaring the appellant's mortgage to be subject to the mechanic's lien of the plaintiff, and directing a sale of the mortgage for the satisfaction of the lien. That judgment has been unanimously affirmed by the Appellate Division, and the appellant now appeals to this court.

The case presents several grave questions upon which we do not pass, as the appellant seeks the determination of a single one only, that is whether on the facts found its mortgage was, under the provisions of the Mechanics' Lien Law, subject to the plaintiff's lien. Section 21 of that law, as amended in 1900 (Ch. 78), reads: "Building Loan Contract.— A contract for a building loan, either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and within ten days after its execution be filed in the office of the clerk of the county in which any part of the land is situated, and the same shall

not be filed in the register's office of any county. If not so filed, the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter. A modification of such contract shall not affect or impair the right or interest of a person, who, previous to the filing of such modification had furnished or contracted to furnish materials, or had performed or contracted to perform labor for the improvement of real property, but such right or interest shall be determined by the original contract." The ground on which the appellant's mortgage has been subjected to plaintiff's lien is that the true agreement between the appellant and Forgotston for a building loan was never filed, and this conclusion is based on the following finding of fact, which having been unanimously affirmed by the Appellate Division, is conclusive upon this court : " In the course of negotiations with the Title Guarantee and Trust Company to procure the said building loan to the said Forgotston, the defendant, Eugene Clifford Potter, had agreed orally with the defendant, Title Guarantee and Trust Company, that the said defendant Forgotston should out of the first payment to be made on the said building loan discharge the $160,000 mortgage upon the said property, and had agreed further that at the time of the first five payments to be made on the said building loan the said Forgotston should pay the sum of $11,100 in equal installments of $2,220 out of each of the said first five payments. Said building loan agreement did provide that a mortgage which was to be given to secure the said building loan should be a first lien, but did not provide that any part of the said building loan should be used to pay off the prior mortgage upon the said property." The appellant insists that assuming the existence of that agreement, it was a nullity because the section of the statute cited provides that such agreements must be in writing and further that it was superseded by the written agreement under the familiar rule of law that all oral negotiations are merged in the written contract. We will

pass over these objections, however, and go to the principal proposition in the case, which is that, though the written agreement provided in terms that the mortgage which the appellant was to receive as security for its loan should be a first mortgage, not subject to incumbrance, the oral agreement that existing incumbrances should be paid out of the loan so as to make the appellant's mortgage a first mortgage was a material modification or variation of the written contract. If this proposition is not true the foundation of the plaintiff's case is swept away. In our opinion it is not true. It is conceded by the learned counsel for the respondent that " a building loan agreement need not provide *for the disposition of the proceeds of the loan*," but he contends if there is an agreement as to such disposition its terms must be incorporated in the written agreement which is filed in the county clerk's office. It is urged that laborers, contractors and materialmen are entitled to rely (to a certain extent at least) on the loan as a source from which they may obtain payment for their work or material. It has been held by the Supreme Court that no privity exists between a lienor and a person who has agreed to make the owner a building loan, and that such agreement could not be enforced at the instance and for the benefit of the lienor, and that ruling has been approved by this court. (*Alyea* v. *Citizens' Savings Bank*, 12 App. Div. 574; affd. on opinion below, 162 N. Y. 597.) The case arose, however, before the enactment of chapter 418 of the Laws of 1897, which first dealt with the subject of building loan contracts and required them to be in writing and to be filed in the county clerk's office. As originally enacted it applied only to contracts for such loans when made on the sale of lands; as amended in 1900 it applied to all agreements for building loans. It is contended, not without force, that the doctrine of the case cited is no longer applicable, and the case of *Anglo-American S. & L. Assn.* v. *Campbell*, decided by the Court of Appeals of the District of Columbia (13 Appeal Cases, D. C., 581; 43 L. R. A. 622) is cited as an authority for the proposition that a lienor may resort to the

unpaid portion of a building loan for the satisfaction of his lien. Assuming, without deciding, the correctness of the proposition contended for, it may well be that an agreement for the diversion of the proceeds of a loan to other purposes than the improvement of the property would be of so vital a character and so affect the security of contractors and materialmen as to require it to be incorporated in any agreement for a building loan. But the oral agreement in this case was not of that character. It was to apply the proceeds of the loan to the benefit of subsequent lienors by discharging an existing incumbrance on the property, which was paramount to any liens that might be filed. It is claimed, however, that the lienors had a right to assume that the whole sum of $370,000 would be a fund in the hands of either Forgotston or the appellant applicable to the payment for the cost of construction, and in the opinion of the learned trial judge (which has been adopted by the Appellate Division) it is said: "Yet the building loan agreement filed is silent as to the intended application of any part of the loan to the retirement of that mortgage; and the only reasonable deduction to be drawn from its language is that the entire loan would be devoted to construction, notwithstanding the provision that the building loan mortgage was to be 'subject to no encumbrance.' The plaintiff had a right to rely on the letter of the building loan contract. It had the right to rely upon the assurance it contained that Forgotston would receive $370,000 to be devoted to the building under construction." From this view I unqualifiedly dissent. The concession already quoted is to the effect that an agreement need not provide for the disposition of the proceeds of the loan. The money once paid to Forgotston could be applied by him to any purpose whatever without creating any liability on the part of the lender. It is also clear that under the terms of the written agreement the appellant was under no obligation to advance any sum until the $160,000 mortgage was satisfied. If, without any prior agreement on the subject, Forgotston had at the time of the first advance produced the attorney for

the mortgagee with a satisfaction of the mortgage, instructed the appellant to pay to the attorney out of the funds enough to satisfy the mortgage, and the defendants had complied with that direction, there could have been no possible criticism upon the propriety or validity of the transaction, for the money would have been Forgotston's, to be disposed of according to his directions. If the mortgage had not already been discharged it was the duty of Forgotston to take that course provided he could procure the attendance of the mortgagee; for not only had the appellant agreed to make the loan, but Forgotston had equally agreed to take the loan and to secure its repayment by a mortgage on property free from incumbrance. The appellant is condemned for agreeing in advance to do that which if it had not been so agreed upon is exactly what the parties should have done in fulfillment of the written contract.

The plaintiff made its contract with Forgotston and entered upon its performance prior to the building loan agreement of the appellant. We assume, however, that its rights are the same as if its contract had been made subsequent to such agreement. Whether any officer or agent of the plaintiff was before the time when, upon the default of Forgotston in making payments, it abandoned the further prosecution of the work, aware either of the building loan agreement or of the title of Forgotston does not appear. Of course the plaintiff was chargeable with notice of all these matters. If it is to be presumed that it knew that a building loan of $370,000 was to be made to Forgotston, it must be equally presumed that it knew that the property was subject to two mortgages, one for $160,000 and the other for $105,000, representing the whole purchase price of the property, the former of which mortgages had necessarily to be disposed of in some way as a condition of the appellant's making the loan. In this state of the record it is difficult to see how the plaintiff or any other persons dealing with Forgotston could have believed that the whole sum of $370,000 was a fund available in the hands of Forgotston for the cost of constructing the building. But

whatever their conjectures may have been, the parties had no right to rely on such conjecture, for the agreement provided that the appellant's mortgage should be free from prior incumbrance and unless the premises were so cleared of incumbrance no obligation rested upon the appellant to advance a dollar. The obligation of the appellant was thus conditional, and to make it absolute it was necessary that the first mortgage should be satisfied. Until the plaintiff ascertained that the mortgage had been paid it could have no assurance that there would be any fund whatever for the construction of the building. Doubtless it was possible, however improbable, that Forgotston might pay it out of his own funds, but if he did not so discharge it, the only remaining source from which it could be satisfied was the loan made by the appellant. Of that possibility, not to say probability, the plaintiff was bound to take notice. It is the ordinary and usual course where a party agrees to make a loan on real estate that existing incumbrances, whether mortgages or taxes and assessments, and also the expenses attendant on the loan, such as the examination of the title, brokerage and the like, are paid out of the new loan so far as practicable. Of this custom, which is the common course of practice by conveyancers, the court may take notice. In the present case the sum agreed to be paid for procuring and making the loan seems very large. There may, however, be some explanation thereof, and it is sufficient to say that the trial court has not found that it was so exorbitant as to be a diversion of the fund produced by the loan.

It is further to be observed that in contracts for the sale of real estate a specific performance may in a proper case be decreed in favor of the vendor, even though his title is subject to incumbrance, allowance being made to the vendee for the incumbrance. (*Guynet* v. *Mantel*, 4 Duer, 86; *Frain* v. *Klein*, 18 App. Div. 64; *Smyth* v. *Sturges*, 108 N. Y. 495.) If the claim of the respondent, that the unadvanced part of the building loan constitutes a fund available to lienors, is correct, it is difficult to see why a court of equity, where the

fund is ample for the purpose, would not direct the lender to pay out of the loan any incumbrance on the mortgaged premises and apply the surplus to the liens. In other words, a court of equity might, under the written contract alone, compel the appellant to do exactly what it has done.

We thus conclude that the oral agreement found by the trial court was in no proper sense a modification of the written agreement between the parties, which was filed as required by law; that it related to a mere detail of the execution of the contract, a detail the failure to observe which by either party would not constitute a breach of the contract itself; that despite the oral contract, had Forgotston paid off the first mortgage he could have compelled the appellant to pay over to himself the whole of the loan; that under the written contract had Forgotston not paid off the incumbrances he could direct the appellant to discharge them out of the loan.

The judgment should be reversed and new trial granted, costs to abide the event.

HAIGHT, VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.