Morton B. Silberman, J.
This is an action to foreclose a certain consolidated real property mortgage executed by defendant Golan Heights Developers, Inc. (hereinafter Golan Heights), as mortgagor, in favor of1 plaintiff hereinafter HNC), as mortgagee. The said mortgage is in the principal amount of $9,650,-000, and constitutes a lien upon some 187 building lots, some improved, which are located in numerous different residential subdivisions in Rockland County.
HNC moves: (a) for summary judgment of foreclosure; (b) for the appointment of a referee to compute; and (c) for other incidental relief. Several defendants have opposed the motion. Numerous others have entered into stipulations of settlement with HNC, subsquent to the submission of this motion. Several other defendants have moved, by separate notices of motion, for various types of relief. Each of such motions will be discussed below.
BACKGROUND
The following are the basic facts out of which this foreclosure action arose:
(1) On January 17, 1973, through a series of assignments, HNC became the owner and holder of 21 mortgages with an aggregate unpaid principal balance of $3,945,442.95. Those mortgages constituted liens upon portions of the real property affected by the consolidated mortgage sought to be foreclosed herein. For convenience, these mortgages are hereinafter referred to as the Assigned Mortgages.
(2) On January 17, 1973, through a series of conveyances, Golan Heights became the owner in fee of the real property encumbered by the aforesaid Assigned Mortgages.
(3) On January 17,1973 HNC and Golan Heights entered into a building loan contract, whereby HNC agreed to loan Golan *698 Heights the sum of $9,650,000, to be advanced in periodic installments. Said building loan contract was filed in the Rockland County Clerk’s office on January 19, 1973.
(4) On January 17, 1973 Golan Heights made and delivered to HNC a building loan mortgage note in the amount of $5,704,-557.05, payable in the manner specified therein. Said note is hereinafter referred to as the HNC note.
(5) On January 17, 1973, to secure repayment of the HNC note, Golan Heights executed in HNC’s favor a building loan mortgage. That mortgage was recorded on January 19, 1973 in the Rockland County Clerk’s office.
(6) On January 17, 1973 HNC and Golan Heights entered into an agreement whereby the Assigned Mortgages (referred to in [1], supra) and the building loan mortgage (referred to in [5], supra were, in HNC’s words, ‘‘ consolidated, coordinated, modified and spread so that together they would thereafter constitute in law but one first mortgage, a single lien, securing the principal sum of $9,650,000.00 and interest ’ ’ upon the encumbered real property. The foregoing agreement was recorded on January 19, 1973 in the Rockland County Clerk’s office.
(7) On February 13, 1973, the afore-mentioned agreements were modified to embrace two additional parcels of real property. This agreement was recorded on February 14, 1973 in the Rockland County Clerk’s office.
HNC alleges that between January 17, 1973 and September 21, 1973 it advanced to Golan Heights $6,761,095.17; that Golan Heights repaid a total of $2,432,524.47; and that the present unpaid principal balance due and owing is $4,328,570.70. HNC further alleges that Golan Heights *! fell permanently in arrears ” in interest payments commencing with June 1, 1973. (Interest continues to accrue at the approximate rate of $60,000 per month.) Based upon the foregoing, and other defaults, HNC seeks a judgment of foreclosure.
OPPOSITION TO THE MOTION FOB SUMMABY JUDGMENT
Defendants Charles J. Reid, Inc., Cornell & Reid, Inc., Sandy Hill Coal & Supply Company and Leon’s Plumbing & Heating Co., Inc., have filed mechanics’ liens against numerous lots encumbered by the consolidated HNC mortgage. The aggregate amount allegedly due these defendants is $44,145.39.
*699 The answers of the above-named lienors contain denials, affirmative defenses and a counterclaim for foreclosure of their respective mechanic’s liens. In substance, these lienors contend ■that HNC’s mortgage is subordinate to their mechanic’s liens by reason of certain alleged violations of section 22 of the Lien Law.
Insofar as relevant hereto, said section 22 of the Lien Law provides as follows: “ A building loan contract * * * and any modification thereof, must be in writing and duly acknowledged, and must contain a true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and the net sum available to the borrower for the improvement, and, on or before the date of recording the building loan mortgage made pursuant thereto, to be filed in the office of the clerk of ■the county in which any part of the land is situated, except that any subsequent modification of any such building loan contract so filed must be filed within ten days after the execution of any •such modification. * * * If not so filed the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter. ’ ’ (Emphasis added.)
The lienors allege that section 22 was violated, because the borrower’s affidavit filed herein, among other things, falsely stated that ‘ ‘ the net sum available to the * * * borrower for the improvement is $9,'585,271.92 ”; whereas, in fact, the sum of $3,945,442.95 was deducted from the foregoing sum and used to acquire the Assigned Mortgages and, therefore, was not available to the borrower for the improvement.
The aforesaid sum of $3,945,442.95 expended to acquire the Assigned Mortgages obviously accounts for the difference between the sum to be advanced according to the terms of .the building loan contract (i.e., $9,650,000) and the principal amount of the HNC building loan mortgage (i.e., $5,704,557.05). Thus, there is no question or dispute but that HNC knew at the time the borrower’s affidavit was executed that only 5.7 million dollars would actually be available to the borrower for the improvement, and not 9.5 million dollars as represented in the borrower’s affidavit.
HNC does not deny knowledge of the foregoing, but contends:
(a) that section 22 of the Lien Law was not violated thereby;
(b) that even if there was a violation of section 22, the penalty of subordination flows only from a failure to file a building loan *700 contract, and not from a mere filing of a defective borrower’s affidavit; and (c) that even if its consolidated building loan mortgage is subordinated by operation of section 22, the lien of the Assigned Mortgages remains unimpaired and superior to defendant’s subsequently filed mechanic’s liens.
As originally enacted in 1897 as section 21 of the Lien Law (L. 1897, ch. 418), and amended in 1909 (L. 1909, ch. 38), section 22 of the Lien Law required only that a building loan contract be in writing, acknowledged and filed ;• and, like the statute in its present form, imposed the penalty of subordination of the mortgagee’s lien when the building loan contract was “ not so filed. ” The requirement that such filed contracts also contain a verified borrower’s statement was added to section 22 in 1930 (L. 1930, ch. 859, § 14).
Prior to the addition of the borrower’s statement requirement, section 22 was regarded as having been intended simply “ to acquaint prospective contractors with the fact that they furnish labor and materials subject to claims prior to theirs against the property”. (McDermott v. Lawyers Mtge. Co., 232 N. Y. 336, 341.) Thus viewed, in its pre-1930 form, section 22 did not require a building loan contract to contain any provision “ for the disposition of the proceeds of the loan ”. (Pennsylvania Steel Co. v. Title Guar. & Trust Co., 193 N. Y. 37, 42.) Consequently, the subordination penalty could not be invoked when prior mortgages were satisfied out .of the proceeds realized from a building loan, and that fact was not disclosed in the filed building loan contract (see, e.g., Pennsylvania Steel Co. v. Title Guar. & Trust Co., supra; Summers Lbr. & Supply Corp. v. Barbara Constr. Corp., 255 N. Y. 525).
It was thus possible under the pre-1930 version of section 22, where a building loan contract had been filed, for materialmen to be misled into believing that greater sums were available to the borrower for the improvement than actually were. The 1930 amendment was obviously designed to overcome that deficiency in the statute. As previously stated, the 1930 amendment (L. 1930, ch. 859, § 14) required every filed building loan contract to contain “ a true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and the net sum available to the borrower for the improvement ”.
HNC’s contention that the subordination penalty flows only from a complete failure to file a building loan contract, but not from the filing of a building loan contract containing a mate *701 rially false borrower’s statement, is not supported by the case law. It also ignores and defeats the salutary purpose of the statute. The potential danger to prospective suppliers of material and labor is just as great when the borrower’s statement grossly overstates the net sum actually available to the borrower for the improvement as when the building loan contract is not filed at all.
Prudential Ins. Co. of Amer. v. Songood Realty (N. Y. L. J., Feb. 21, 1939, p. 835, col. 7), upon which HNC places principal reliance, is immediately distinguishable from the present case. The borrower in Prudential used a $150,000 building loan advance ;to ¡satisfy pre-existing liens against the mortgaged premises. However, the lender in Prudential, unlike HNC, had absolutely no knowledge that the proceeds were to be used by the borrower for such purposes. Moreover, in Prudential no claim was advanced concerning the filing of a false borrower’s statement. The sole ground upon which the defendant lienors in Prudential assailed the payments in question was that same were made with the knowledge and consent of- the lender and in contravention of the ‘ ‘ trust fund ’ ’ provisions of the Lien Law and of the building loan contract. Thus, the issue before the court in the present case was neither raised nor decided in Prudential.
Pennsylvania Steel Co. v. Title Guar. & Trust Co. (193 N. Y. 37, supra), also relied upon by HNC, was decided in 1908, long before the addition to section 22 of the Lien Law of the requirement that a borrower’s statement be filed with a building loan contract. In fact, it was conceded in Pennsylvania Steel (p. 42) that under section 22, as it then existed, “ ‘ a building loan agreement need not provide for the disposition of the proceeds of the loan ’ ” (emphasis in original).
Summers Lbr. & Supply Corp. v. Barbara Constr. Corp. (255 N. Y. 525, supra), which is also cited by HNC, was apparently decided upon facts which occurred prior to the 1930 amendment to section 22 and, in any event, did not involve the issue of a false borrower’s statement.
Finally, in West Side Fed. Sav. & Loan Assn. v. Amato Realty Corp. (N. Y. L. J., Jan. 2, 1943, p. 8, col. 7), also relied upon by HNC, a $200 payment in satisfaction of a pre-existing lien was challenged as an improper “ preferential ” payment. No claim was advanced that a false borrower’s statement had been filed-.
The court concludes that a lender who files a building loan contract containing a materially false borrower’s statement, *702 which is known by the lender to be false at the time of such filing, must suffer the subordination penalty specified in section 22 of the Lien Law.
The false statement in the borrower’s affidavit herein was most material and substantial. The net sum available to the borrower for the improvement was overstated by some 3.9 million dollars. The borrower’s statement was prepared from a printed form which contained a space for insertion of the amount of “ Sums paid- to take by assignment prior existing mortgages which are consolidated with building loan mortgages ”. That space was left blank, indicating that no sums were expended for such purposes; whereas, in fact some 3.9 million dollars were expended for just that purpose. In addition, the borrower’s affidavit contains the express false statement that ‘‘ the net sum available to the borrower for the improvement is $9,585,271.92”. In fact, only 5.7 million dollars was actually available. Whether or not the defendant mechanics’ lienors actually relied upon the false statements is immaterial (see McDermott v. Lawyers Mtge. Co., 232 N. Y. 336, supra; Sohmer v. Gedney Hills, 8 A D 2d 959).
The only remaining question concerns HNC’s contention that even if its building loan mortgage is subordinated' by operation of .section 22 of the Lien Law, the lien of the Assigned Mortgages -is unaffected thereby and remains superior to defendants ’ subsequently filed mechanic’s liens. HÑC has made a compelling argument in support of such contention. However, in the court’s opinion, the result urged by HNC is precluded by the language of section 22.
The penalty for violation of section 22 is stated in that section as follows: 11 The interest of each party to such [building loan] contract in the real property affected thereby, is subject to the lien and claim -of a person who ¡shall thereafter file a notice of lien under this chapter.”
A building loan mortgage is defined by subdivision 14 of section 2 of the Lien Law as “a mortgage made pursuant to a building loan contract and includes an agreement wherein and whereby a building loan mortgage is consolidated with existing mortgages so as to constitute one lien upon the mortgaged property.”
Therefore, it must be assumed that, when section 22 speaks of the lender’s “ interest ” in the affected realty being subject ■to the claims of subsequent mechanic’s lienors, that term was intended to embrace the lender’s entire interest, including an interest obtained through acquisition by assignment of prior *703 mortgages, which are thereafter consolidated with the building loan mortgage itself.
If the foregoing seems harsh, and it is, it must be understood that we are here dealing not with equitable redress, but with a statutorily imposed penalty. That penalty was deemed necessary by the Legislature to vindicate the strong public policy upon which section 22 is founded. As the Court of Appeals tersely observed in McDermott v. Lawyers Mtge. Co. (232 N. Y. 336, 348, supra), a lender who violates section 22 “ must suffer the consequences.”
The court, therefore, concludes that HNC’s consolidated mortgage, wbich is sought to be foreclosed herein, is subordinate, by operation of section 22 of the Lien Law, to the mechanics’ liens of defendants Charles J. Reid, Inc., Cornell & Reid, Inc., Sandy Hill Coal & Supply Company and Leon’s Plumbing & Heating Co., Inc.
(Balance of opinion omitted from publication.)