HNC REALTY COMPANY (Known in New York State as HNC REALTY COMPANY, INC.), Appellant-Respondent, v BAY VIEW TOWERS APARTMENTS, INC. et al., Defendants; ATLAS, BALOGH ASSOCIATES et al., Respondents; ALWINSEAL, INC., Respondent-Appellant. (Action No. 1.)

NATIONAL WALL SYSTEMS, Respondent, v BAY VIEW TOWERS APARTMENTS, INC. et al., Defendants; WILLIAMSBURG STEEL PRODUCTS Co. et al., Respondents; J & J TILE COMPANY, INC., Respondent-Appellant. (Action No. 2.)

Second Department, November 13, 1978

418

### APPEARANCES OF COUNSEL

*Paul, Weiss, Rifkind, Wharton & Garrison (Allan Blumstein, Joseph E. Browdy* and *Richard Wasserman* of counsel), for appellant-respondent.

*LeVine, Lipton, Rosenthal & Weinstein (Norman L. Rosenthal* of counsel), for Alwinseal, Inc., respondent-appellant.

*Altieri, Kushner & Miuccio (Marc L. Zoldessy* of counsel), for J & J Tile Company, Inc., respondent-appellant.

*Donald Tirschwell* for National Wall Systems, respondent.

*Santangelo & Santangelo (Bernard B. Cohen* of counsel), for Imperial Sheet Metal Works, Inc., respondent.

*Golenbock & Barell (Arthur C. Silverman* and *Stephen M. Rathkopf* of counsel), for Williamsburg Steel Products Co. and another, respondents.

*Amen, Weisman & Butler (Robert D. Weisman* of counsel), for Simpson Electric Corp., respondent.

*Shapiro & Brown (David Brown* of counsel), for Anthony Perri, Inc., respondent (no brief).

*Sonnenfeld & Busner* for Jack Brown and others, respondents (no brief).

### OPINION OF THE COURT

DAMIANI, J.

The issue in this case is whether certain mechanics' liens are entitled to priority as against the lien of a building loan

mortgage in the application of the proceeds of a foreclosure sale. Section 13 of the Lien Law provides that the lien of a building loan mortgage shall be superior to mechanics' liens provided, *inter alia,* that the building loan contract is filed as required by section 22 of the Lien Law. Section 22 provides that a building loan contract, and any modification thereof, must be in writing and, on or before the date of recording the building loan mortgage made pursuant thereto, must be filed in the office of the clerk of the county in which the land is situated. Any subsequent modification of the contract must be filed within 10 days after the execution of such modification. If not so filed, the interest of each party to the contract in the real property affected thereby is subject to the claims of persons who thereafter file mechanics' liens. Here, the lender, HNC Realty Company (hereinafter HNC), and the borrower, Bay View Towers Apartments, Inc. (hereinafter Bay View), entered into a building loan contract which required a certain type of bond. The mechanics lienors contend that the bond that was given by Bay View and accepted by HNC does not comply with the requirements of the building loan contracts, that it therefore constituted a material modification of the contract and that the failure to file it in accordance with section 22 of the Lien Law defeats the normal statutory priority of the building loan mortgage. The specific facts are as follows:

The instant dispute arises from the failure of a multimillion dollar project involving the construction of two luxury high rise apartment buildings and appurtenant facilities in the Bayside section of Queens County. After several preliminary financing arrangements, Bay View entered into several agreements with HNC. The first of these was a building loan contract dated January 22, 1973. Paragraph 21 of that agreement provided, in substance, that the principal (Bay View) would furnish the obligee (HNC) "with a surety bond guaranteeing that the Principal faithfully pay its subcontractors and materialmen funds due from the Principal for work performed and materials furnished, as said work or materials have been approved by the Obligee, with the funds disbursed by the Obligee to the Principal for this purpose." This building loan contract was amended by agreements dated January 22, April 16, April 17 and July 20, 1973.

Finally, a whole new financing arrangement was worked out for a 41 million dollar building loan and a new building loan

contract was prepared. The new loan closed, and the new building loan contract was signed, on August 30, 1973. The record is unclear as to whether this new building loan contract superseded the prior contract, but it appears as though it did.

For the purpose of this case, the crucial paragraphs of the building loan contract of August 30, 1973 are numbers 27 and 27.8, which state:

"27. *The lender has this day advanced to the borrower the sum of Nine Million Six Hundred Fifty-Two Thousand Seven Hundred Fifty-Three Dollars ($9,652,753). The borrower may,* from time to time, *request advances on account of the remainder of the loan from the lender,* which requests shall be based on work in place at the premises, and the lender, at its discretion, may honor such request and advance to the borrower the amount requested, except that, subject to all of the other terms, covenants and conditions of this agreement, lender shall honor at least one request per month. *Each such request* shall be made by borrowers delivering to the lender at least ten (10) days prior to the making of the advance a fully completed and executed Request for Advance Certificate in the form of Exhibit B annexed hereto and hereby made a part hereof, which Request for Advance Certificate shall be dated not more than ten (10) days prior to the date of delivery thereof to the lender, which Request of Advance Certificate *shall be accompanied by the following* \* \* \*

"27.8 *Copies of all contracts and subcontracts* for the work and materials referred to in such Request for Advance Certificate *not theretofore submitted to and approved in writing by lender,* which contracts and subcontracts shall be in form and substance satisfactory to, and shall be approved in writing by, lender, *together with surety payment bonds,* issued by a surety company or companies qualified to do business in the State of New York and satisfactory to lender, in which borrower shall be the principal, covering all concrete, electrical and plumbing subcontractors under such contracts and subcontracts, and all other subcontracts thereunder whose contracts shall be for $1,000,000.00 or more, in the full amounts of their respective contracts, and such additional surety payment bonds, or endorsements to bonds previously issued, as may be necessary to cover all subcontractors and supplies representing in the aggregate not less than 65% of the total cost of labor and materials incurred in the construction of

both Apartment Buildings and all site improvements at the Site." (Emphasis supplied.)

It appears that paragraphs 27 and 27.8 of the August 30, 1973 contract were intended to accomplish the same goal as paragraph 21 of the January 22, 1973 building loan contract. In substance, they require that upon every advance of money by HNC to Bay View, the latter must provide "surety payment bonds" to the former "covering" (1) all concrete, electrical and plumbing subcontractors, (2) subcontractors whose contracts were for $1,000,000 or more and (3) all other subcontractors representing not less than 65% of the cost of labor and materials incurred in construction of the buildings and other site improvements.

Contemporaneous with the execution of the August 30, 1973 building loan contract, Bay View provided HNC with a bond. The prime issue in this case is whether this bond complies with the requirements of paragraph 27.8 of the building loan contract or is a material modification thereof. The first whereas clause of the bond notes the existence of the January 22, 1973 building loan contract and its amendments, wherein Bay View agreed to construct the apartment buildings and HNC agreed to lend the funds for construction. The second whereas clause notes the existence of paragraph 21 of the January 22, 1973 building loan contract, which required Bay View to furnish HNC with a surety bond guaranteeing that Bay View would faithfully pay its subcontractors and materialmen. The third whereas clause states: "WHEREAS, notwithstanding the condition of Paragraph 21 of said Agreement dated January 22, 1973, as amended, providing that the Principal furnish the Obligee with a 'surety payment bond' to guarantee payment of the costs of labor and material incurred in the construction of said buildings, the Surety agrees to guarantee that the Principal *will faithfully account* for the funds disbursed by the Obligee to the Principal for this purpose as recited in this instrument. The Obligee agrees to accept this bond as written in lieu of anything contained in said Agreement dated January 22, 1973, as amended, to the contrary." (Emphasis supplied.) The bond specifically noted that it was for the benefit of HNC only and that no other party had any right nor might bring any action on it.

The building loan contract dated August 30, 1973 was filed in accordance with the provisions of section 22 of the Lien Law. *The bond was not filed.* Thereafter, construction contin-

ued for about one year until the project failed and HNC took possession of the premises. Because of Bay View's default, HNC exercised its option to accelerate the due date of the principal debt and commenced this action to foreclose its building loan mortgage. At the same time, numerous subcontractors and materialmen commenced an action to foreclose their liens. The foreclosure actions were consolidated.

On March 31, 1977 Simpson Electric Corp., one of the lienors, moved for summary judgment declaring that its mechanic's lien had priority over HNC's mortgage lien. The motion was based upon the alleged noncompliance by HNC with the strict provisions of section 22 of the Lien Law. Simpson Electric, in its motion, claimed that HNC's acceptance of a bond which did not comply with the terms of the contract constituted a material modification of the contract and that it should therefore have priority over HNC's mortgage lien. Numerous other mechanics lienors joined in Simpson Electric's summary judgment motion.

The motion for summary judgment was opposed solely by the affidavit of an associate of the firm representing HNC. He stated simply that he had attended the closing of the building loan and received copies of certain subcontracts, that thereafter he delivered the building loan mortgage and building loan contract to a title company for filing and, finally, that those documents were subsequently returned to him with appropriate stamps indicating that they had been properly filed.

The motion for summary judgment came on to be heard before Mr. Justice ANGELO GRACI. He rendered an opinion holding, in substance, that the bond which was given was not a "surety payment bond" as required by the contract because, by definition, such bonds run in favor of subcontractors and materialmen whereas this bond, by its own specific terms, did not. Therefore, the acceptance of this bond constituted a material modification of the terms of the contract, requiring that the bond be filed. Partial summary judgment was granted to the moving mechanics lienors, declaring the lien of HNC's building loan mortgage subordinate to their liens, subject to proof of the validity of such liens at the trial (HNC Realty Co. v Bay View Towers Apts., 92 Misc 2d 151).

HNC has appealed contending that there was no modification of the building loan contract because the bond that was given was a "surety payment bond" and even if it did not comply with the terms of the contract, the modification was

immaterial and therefore did not require filing under section 22 of the Lien Law. These contentions are without merit.

■ There are two major types of bonds commonly used in connection with private construction contracts. The first is the performance bond in which, generally, a surety guarantees to the owner that a contractor will faithfully perform the provisions of his contract. It gives no right of action on the part of third parties to recover for breach of the contractor's duty of performance *(Scales-Douwes Corp. v Paulaura Corp.,* 24 NY2d 724, 726; 17 Am Jur 2d, Contractors' Bonds, § 20).

The second type of bond is now commonly known as a labor and material bond, and is often called a "payment" bond, in which, generally, a surety guarantees to the owner that the claims of subcontractors will be paid by the general contractor. Subcontractors may sue to recover on this bond notwithstanding the fact that they are not the named obligee *(Daniel-Morris Co. v Glens Falls Ind. Co.,* 308 NY 464, 468; 13 Couch, Insurance [2d ed], § 47:174 *et seq.;* 9 NY Jur, Contractors' Bonds, § 18). Often, performance and payment bonds are combined into one instrument.

The ordinary situation in which performance or payment bonds are used is one in which the owner of the property hires a general contractor for the construction, who in turn uses the services of subcontractors. The purpose of a "payment" bond in such a situation is to protect the equity of the owner in his property against the claims of unpaid subcontractors. The facts in the case at bar are substantially different. Here, the owner of the property, Bay View, also acted as the general contractor. The mortgagee, HNC, was the party that required a surety payment bond.

■ The general rule of construction to be used to determine whether a contract was intended for the benefit of persons other than the obligee, is whether the contract shows an intent to protect such persons by agreeing to see that they are paid; the intention of the parties manifested in their agreement is controlling (13 Couch, Insurance [2d ed], § 47:193). Here, the building loan contract states very clearly that Bay View was to provide surety payment bonds *"covering * * * subcontractors".* (Emphasis added.) The plain meaning of this language is that the coverage of the bond to be provided was to extend to subcontractors and that they would be entitled to sue thereon. The bond that was given does not comply with this unmistakable intent of the contract. It specifically states

that it is for the benefit of HNC only and it merely guarantees that Bay View will "faithfully account" for the funds disbursed pursuant to the building loan. Thus it amounts to nothing more than an agreement to indemnify HNC for any misappropriation of the building loan moneys by Bay View.

HNC contends, for the first time on this appeal, that there is a question of fact presented on the record as to whether the parties intended that subcontractors be entitled to sue upon the surety payment bond required by the August 30, 1973 building loan agreement and that this question of fact is sufficient to preclude summary judgment.

At Special Term, however, HNC contended that the interpretation of the building loan contract was a matter of law for the court and this is manifested by the fact that it saw fit to submit only a two-page affidavit in opposition to the motion for summary judgment. It is incumbent upon a party opposing a motion for summary judgment to assemble, lay bare and reveal its proofs to establish the existence of a genuine issue of fact for trial (*Di Sabato v Soffes,* 9 AD2d 297, 301). It is a well-established rule of contractual interpretation that words are to be given their plain and normal meaning and that technical words are to be given their generally accepted technical meaning. However, the usage of the parties may vary the normal or technical meaning of the words and, where possible, the words of the contract will be given the meaning which best effectuates the intention of the parties (Simpson, Contracts [2d ed], § 102, p 209). Parol evidence would have been admissible to introduce proof of usage and custom and to define the meaning intended by the parties of the term "surety payment bond" as used in the contract (see Simpson, Contracts [2d ed], § 98, p 197; § 101, pp 206-208). HNC could therefore have produced affidavits from, *inter alia,* the drafter of the contract, the person who negotiated and signed the contract on its behalf, and an expert in the field of insurance, as to the usage of the parties or the technical meaning of the phrase. It did not do so. In the absence of any such extrinsic proof, inquiry as to the meaning of the contract should be confined to the instrument itself and the meaning of technical terms as defined in current treatises on insurance or in case law (see, e.g., Couch, Insurance [2d ed]; 9 NY Jur, Contractors' Bonds, § 11; Contractor's Bond—Laborers or Materialmen, Ann. 77 ALR 21, 55). Read in this light, and considering all of the surrounding circumstances, the unmis-

takable meaning of the contract, as stated above, is that the coverage of the required bond was to extend to the benefit of subcontractors, who, as third-party beneficiaries, were to have the right to sue thereon. The bond provided by Bay View and accepted by HNC, gave no right of suit to third parties and thus constituted a modification of the contract.

 The next question is whether such modification was "material" so as to require that it be filed pursuant to section 22 of the Lien Law. The test was appropriately stated by Mr. Justice GRACI in *Security Nat. Bank v Village Mall at Hillcrest* (85 Misc 2d 771, 781-782) and by Mr. Justice LYNDE in *New York Sav. Bank v Wendell Apts.* (41 Misc 2d 527, 529); namely, a modification of a building loan contract is "material" if it (1) alters the rights and liabilities otherwise existing between the parties to the agreement or (2) enlarges, restricts or impairs the rights of any third-party beneficiary. This case comes within the second category. There is no question that HNC's failure to exact compliance with the contract's requirement that Bay View procure a surety payment bond "covering * * * subcontractors" worked to impair the rights of those subcontractors. Had the required bond been given, the subcontractors would have been paid directly by the surety and this lawsuit would have been avoided.

█ Accordingly, HNC's acceptance of a bond which did not comply with the terms of the building loan contract constituted a material modification thereof, so that either the bond itself or a memorandum expressing the substance of the modification was required to be filed with the county clerk by the terms of section 22 of the Lien Law, and the failure to file defeats the priority of HNC's mortgage lien under section 13 of the Lien Law.

We have considered the other contentions raised by HNC and find them to be without merit. Accordingly, the order under review should be affirmed insofar as appealed from by HNC Realty Company. As to the cross appeals of J & J Tile Company, Inc. and Alwinseal, Inc., the order under review should be reversed insofar as appealed from and summary judgment granted those parties, subject to proof of the validity of their liens at the trial. The papers of those parties, submitted in support of the motions for summary judgment, sufficiently indicated that they were requesting the same relief as the other mechanics lienors. Although those papers were irregular in that they failed to contain a cross notice of

motion for summary judgment, all the circumstances of this case indicate that they, too, should be awarded summary judgment in the interest of judicial economy (see CPLR 3212, subd [b]; see, also, *Peoples Sav. Bank of Yonkers, N. Y. v County Dollar Corp.,* 43 AD2d 327, 334, affd 35 NY2d 836).

HOPKINS, J. P., LATHAM and SUOZZI, JJ., concur.

Order of the Supreme Court, Queens County, entered July 15, 1977, modified, on the law, by deleting the second decretal paragraph thereof and adding to the first decretal paragraph thereof a provision also granting summary judgment to defendants J & J Tile Company, Inc. and Alwinseal, Inc. As so modified, order affirmed, with one bill of $50 costs and disbursements payable by HNC Realty Company jointly to all respondents appearing separately and filing separate briefs, except J & J Tile Company, Inc. and Alwinseal, Inc.