OPINION OF THE COURT
Joseph Slavin, J.
The motion by all defendants other than the defendant Lanza Contracting Corp. to dismiss pursuant to CPLR 3211 (a) (5) and (7) or for summary judgment pursuant to CPLR 3212 is denied.
Plaintiff is evidently in the business of either acting as a hauler of demolition debris or leasing trucks and equipment to others for such purpose.
From the pleadings and the affidavits, it appears that there is no dispute that between ¡June 17, 1983 and October 27, 1983 *966 plaintiff leased such equipment to the defendant Lanza. Lanza was a subcontractor for the defendant Clark-Fitzpatrick, Inc. (hereafter Clark). Clark was the prime contractor for extensive road renovation work on a section of what is commonly known as the Belt Parkway here in Brooklyn. The total (and undisputed) amount charged to Lanza was $47,902.38. Of this amount all but $3,605 was paid either directly by Lanza or through a check issued by Clark jointly to Lanza and plaintiff. This net amount is now sought against Clark and the two sureties (Federal and Aetna) on its labor and material bond.
At issue in the motion is the applicability of State Finance Law § 137 (3) and (4) (b) as amended by the Laws of 1980 (ch 360).
The moving defendants’ first prong of attack is based upon subdivision 3. This attack is twofold. Clark initially argues that it cannot be a direct defendant (absent their being a necessary party in an action on the bond), in that plaintiff had “no contractual relationship express or implied with such contractor.” As to this point, I find from all of the documents annexed to the papers submitted that no implied contractual relationship was established by reason of the payment of $23,750 by Clark’s check issued jointly on September 1, 1983, to plaintiff and Lanza. Likewise the request for waiver of lien prepared by Clark on November 16, 1983 and sent to plaintiff does not create a contractual relationship.
In that I agree with Clark that there was no contractual relationship between it and plaintiff, we now turn to Clark’s second prong of attack, not only in its own behalf but also on behalf of the sureties. As to this point the section reads in pertinent part that: “3. Every person who has .furnished * * * material * * * to a subcontractor of the contractor, in the prosecution of work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the * * * material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action; provided, however, that a person having a direct contractual relationship with a subcontractor of the contractor furnishing the payment bond but no contractual relationship express or implied with such contractor shall not have a right of action upon the bond unless he shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed or the last *967 of the material was furnished, for which his claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or for whom the labor was performed.”
Looking at the cited portion of the section, and keeping in mind the purposes of the State of New York in requiring these payment surety bonds, which is to protect suppliers of labor and materials by guaranteeing them payment of their proper charges HNC Realty Co. v Bay View Towers Apts. (92 Misc 2d 151, mod 64 AD2d 417), we must determine if there is no factual issue as to whether plaintiff gave “written notice to such contractor * * * with substantial accuracy the amount claimed”.
Clark maintains that it did not receive “within one hundred twenty days from the date on which the last * * * of the material was furnished” a formal document setting forth the claim. Plaintiff urges, that while no such formal document was sent, by reason of the dealings between them and Clark (including the oral discussions of continual withholding of moneys paid by Clark to Lanza by Lanza which gave rise to the September 1, 1983 payment discussed above) and a November 16,1983 letter and waiver of lien sent to it by Clark, that the spirit, if not the letter, of the claim was timely presented to Clark.
On November 16, 1983 (which is within the 120-day period) Clark, through its accounts payable supervisor, sent plaintiff a letter, with reference to the job on which Lanza had been working, which in pertinent part reads: “Attached you will find a waiver of lien form for the above-referenced project. In order to produce joint checks for monies of owed to you by Lanza Contracting Corp. for this project, it is necessary for us to receive this form with the appropriate dollar amounts filled in.”
An examination of the waiver of lien form, bearing Clark’s name at the top thereof, including looking at the typewritten portions, I find that Clark inserted the date (Nov. 16, 1983), plaintiff’s and Lanza’s names, that it included work performed “to and including October 14, 1983.” The dollar amounts, both written out and in figures (total billed $47,922.38, balance due $3,605) and “unpaid as of November 16, 1983” as well as the signing date of November 28, 1983 were typed or handwritten by plaintiff. The preprinted waiver form included specific reference to Clark’s master contract, having the contract number, job number and other identification.
I find, for the purpose of this motion, that this waiver of lien is sufficient in form to satisfy the requirements that the “written notice * * * (states) with substantial accuracy the *968 amount claimed, and the name of the party to whom the material was furnished”. In connection with this determination I have considered Ulster Elec. Supply Co. v Maryland Cas. Co. (30 NY2d 712) cited by defendants. Their reliance on such case as it relates to the form of the statement is not well taken, merely by referring to the language of the letter written in Ulster. The Court of Appeals affirmed the Appellate Division reversal of the denial of a dismissal solely on the question of the mode of service of the statement. At 30 NY2d, page 713, the court specifically wrote “[w]e pass on no other question.” Looking at the Ulster case at the Appellate Division, we find, in the dissent, Mr. Justice Herlihy, wrote “[t]he majority do not reach the question of the sufficiency of the alleged notice to meet the requirements of * * * section 137, but it appears” that even the skimpy letter sent in Ulster was sufficient (35 AD2d 309, 312). A fair reading of both court’s decisions would indicate that the issue of the sufficiency of a notice was never fully determined, although the Court of Appeals had before it the dissent which specifically mentioned such problem.
As stated, I find that the waiver form, in this case is a proper notice since it meets the criteria for such a notice so properly stating the purpose of these bonds as set forth in paragraph 10 of the reply affirmation of Mr. Jonathan R. Morris, the defendants’ attorney: “The reason for the notice requirement is to afford protection to the contractor by fixing a date beyond which the contractor will not be liable for the subcontractor’s debts and to apprise the contractor of the fact the supplier is looking to it for payment of the subcontractor’s obligation. See e.g., U. S. for Use and Benefit of Harris Paint Co. v. Seaboard Surety Co., 312 F. Supp. 751, aff’d, 437 F.2d 37 (5th Cir. 1972); U.S. to Use of Bailey v. Freethy, 469 F.2d 1348 (9th Cir. 1972). (Both cases decided pursuant to 40 U.S.C. § 270 (b) (the ‘Miller Act’), the federal counterpart to State Finance Law § 137).”
Here, plaintiff, other than the fixing of an interest date is not seeking any more than what was stated in the waiver of lien.
Now that we have determined that the waiver of lien form is sufficient to meet the demands of the statute as to sufficiency of identification of the contract, the subcontractor and the claimant, we address ourselves to service of the notice and whether an allegation of such service is necessary in the complaint. As to the allegation requirements, there is no discussion of this problem in the moving affirmation. The answer does however assert an affirmative defense. While the plaintiff has not cross-moved to strike this affirmative defense, I may search the record as *969 authorized by CPLR 3212. I find that the allegation is not required, and accordingly, sua sponte, strike the same.
The answer also sets up an affirmative defense, that the document referred to in paragraph 6 of the complaint was not annexed to the copy served. Such deficiency even if it applied to the moving defendants has been cured by serving copies of those papers, which are different from the notice at issue here, by the plaintiff’s affidavit in opposition. An examination of paragraphs 5 through 8 of the complaint shows that it is a cause of action as against Lanza only.
The next issue is service of the notice. While the moving papers stress the fact that the notice was not sent by registered mail, both parties overlook the portions of subdivision 3, which allows the notice to be delivered personally to the contractor. In the affidavit of Vincent Ranelli, he swears that “sometime in December 19831 personally visited the job site and dropped off a copy of the Waiver of Lien form”. Since there is no comparable affidavit denying receipt of this form there is an issue of fact as to whether the last lines of subdivision 3, “that where such notice is actually received by the contractor by other means, such notice shall be deemed sufficient” did in effect take place.
The final prong of the movants attack is to urge that the action was untimely instituted. The point is made that section 137 (4) (b) requires that “[n]o action on a payment bond * * * shall be commenced after * * * one year from the date on which final payment * * * became due.” (Emphasis added.)
It is conceded that the action was instituted by the service of the summons and complaint on the Secretary of State on November 14,1984. The problem is, for the purposes of this motion (and ultimately on trial), when did the final payment become due.
The complaint alleges that Lanza leased equipment until October 27', 1983 but the payment for the balance was not due until November 30,1983. The waiver of lien shows the balance due to be unpaid as of November 16,1983. The waiver also has a line which states that the lien was waived for materials furnished through October 14,1983. On the face of the complaint and other documents, I cannot determine when “final payment” was due.
The complaint has two causes of action against Lanza. The first, as a straight work labor and services theory alleging the balance was due on November 30, 1983. The second cause is based on an account stated as of June 30,1983. On this account stated, partial payment was made on September 1,1983 by the two-party check discussed above. What effect such payment has *970 on the account stated need not be determined at this time since it is as against the defaulting defendant, Lanza, only. The third cause of action as against the moving defendants incorporates only the first cause of action which has been read together with it in this decision. At issue upon the trial will be when the “final payment” was due from Lanza. Was it on October 14 (the waiver of lien date), October 27,1983 (the last day of supplying equipment) or November 30, 1983 as alleged in the complaint. Here oral testimony as to the custom of the trade to show the intention of the parties as to payment. An educated guess would be that the custom and usage of the trade would be to permit some period of time after the last day of equipment usage, to allow the subcontractor to submit its bills to the contractor and obtain payment on behalf of the creditor. (See, HNC Realty Co. v Bay View Towers Apts., 64 AD2d 417, 423, supra, where the Appellate Division authorized paroi evidence as to usage and custom to show meaning and intent of the parties as to the usage of the term “surety payment bond” appearing in the contract at issue therein; see also, Miner v Long Is. Light. Co., 40 NY2d 372, 381; Brownie’s Army & Navy Store v E. J. Burke, Jr., Inc., 72 AD2d 171; Rothstein Corp. v Kerr S. S. Co., 21 AD2d 463; Shaw v Dreyfus & Co., 64 Misc 2d 122.) If the trier of the facts determines that final payment was due as of October 27, then the trial court would dismiss the action as untimely instituted. If found to be either November 16 or November 30, 1983, the action instituted was within the period prescribed by section 173.