In re GROSSINGER'S ASSOCIATES, a New York Limited Partnership, Debtor.

BERNIE WOLFF CONSTRUCTION CORP., Nationwide Mechanical Contractors Corp., G.C. Monaco Electric, Inc., YH & GDM Construction Ventures, Haggerty Millwork Corp., Skat-Krete Const. Corp., J & L Concrete Construction Corp., Norman Kipper, Inc., Seeco Supply Corp., Service Scaffolding Co., Inc., Grand View Structural Steel, Sefi Fabricators, Perillo Associates, A & R Mechanical Contractors, Inc., Lasala Industries, Inc., Quickway Fabricators, Schnadelbach Partnership, Palma, Inc., Vermont Structural Slate Co., Inc., Waterbury Roofing Co., Inc., Dor-O-Matic, Morrell Brown Plastering Corp., Navajo Construction, Rolling Doors of L.I.C., Inc., Waterbury Roofing Co., Inc., and Modernfold/Styles, Inc., Plaintiffs,

v.

GROSSINGER ASSOCIATES, Lloyds Banks P.L.C. and the Hokkaido Takushoku Bank Limited, Defendants.

Bankruptcy No. 89 B 20943.
Adv. No. 90 ADV 6045.

United States Bankruptcy Court, S.D. New York.

June 12, 1990.

Robert L. Rattet, Laurence R. Nichter, Rattet Liebman, P.C., New York City, for plaintiffs.

Geoffrey Amsel, J. Lucian Manetta, Schulte Roth & Zabel, New York City, for defendants.

Ronald S. Itzler, Ballon, Stoll & Itzler, New York City, for debtor.

## DECISION ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The defendants, Lloyds Bank P.L.C. and The Hokkaido Takushoku Bank, Limited ("the Banks") have moved pursuant to Fed. R.Civ.P. 12(b)(6), as incorporated by Bankruptcy Rule 7012, for an order dismissing Counts I, III, IV and V of the Amended Complaint filed by the plaintiffs, a group of mechanics' lienors who furnished labor and materials to construction projects on the premises owned by the debtor, Grossinger Associates. At the hearing on the motion, the plaintiffs agreed to discontinue Count V, which alleges a claim for *quantum meruit.*

The plaintiffs commenced an adversary proceeding against the Banks in which they contend that their mechanics' liens are superior and prior in right to the liens and security interests claimed by the defendant Banks under a Building Loan Mortgage and Security Agreement on all of the debtor's real property and improvements. The debtor, Grossinger's Associates, filed with this court on December 19, 1989 a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and was continued in possession under 11 U.S.C. §§ 1107 and 1108 as a debtor in possession. The debtor is in the business of developing a parcel of improved real estate known as Grossinger's Hotel and Country Club in Sullivan County, New York.

The complaint alleges that on May 23, 1988, the debtor entered into various agreements, as a borrower, including a Building Loan Agreement and a Building Loan Mortgage and Security Agreement, with S & H Grossinger, Inc., as leasehold mortgagor and the defendant Banks, as lenders. The plaintiffs allege that pursuant to the lending agreements the Banks agreed to loan the debtor up to $31,171,744.00 for construction projects on the premises owned by S & H Grossinger, Inc. and operated by the debtor. The plaintiffs further allege that in reliance upon the financing provided by the defendant Banks, they provided work, labor and services for the construction projects, for which approximately $9 million is unpaid. The complaint quotes the following pertinent part provisions in the Building Loan Agreement:

Notwithstanding any other provision of this Building Loan Agreement, the Lenders shall have no obligation to make any Building Loan Advances unless and until the following conditions have been met and continue to be met on and as of the Closing Date, to the sole and complete satisfaction of the Lenders and their counsel:

\*   \*   \*   \*   \*   \*

(b) Documents. The Lender shall have received the following documents, duly executed by the parties thereto and in form and substance satisfactory to the Lenders and their counsel and in their sole discretion:

\*   \*   \*   \*   \*   \*

(viii) The Bonds;

\*   \*   \*   \*   \*   \*

The plaintiffs allege that no payment bond was ever obtained by the debtor, or furnished to the Banks and that such failure to obtain a payment bond constitutes a substantial material alteration of the Lending Agreements, although no modification of the Lending Agreements was ever filed with the County Clerk, Sullivan County, with the result that the plaintiffs' mechanics' liens have priority over the defendant Banks' mortgage liens in accordance with Section 22 of the New York Lien Law.

In Count I, the plaintiffs demand judgement declaring the liens of the defendant Banks junior to and inferior to the liens of the plaintiffs.

In Count III of the amended complaint, the plaintiffs allege that the Building Loan Agreements provided for advances to the debtor for the purpose of construction not connected with the Grossinger project and that $27 million in advances were utilized for other purposes giving rise to an accounting from the defendant Banks with respect to the debtor's disbursement of the loan proceeds.

Count IV of the amended complaint states that the defendant Banks maintained close supervisory control over the Grossinger project and that the plaintiffs are third-party beneficiaries under the Building Loan Agreement, thereby entitling them to recover for the work, labor and services they furnished to the Grossinger Project.

## DISCUSSION

■ In construing a complaint in the context of a motion under Fed.R.Civ.P. 12(b)(6), a court should deny the motion unless the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to the relief claimed. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Connelly v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Count I of the complaint is addressed to Section 22 of the New York Lien Law, which requires that a building loan contract and any subsequent modifications must contain a sworn statement showing the consideration paid for the loan and the net sum available to the borrower for the improvement of the project. The building loan contract must be filed with the county clerk where the project is located. Any subsequent modifications must be filed within ten days after the execution of the modification. If the filing requirements are not met, the interests of each party to the building loan contract will be junior to the claims of persons who thereafter furnished labor and materials to the project.

One of the purposes of Section 22 of the New York Lien Law requiring filing of building loan contracts and subsequent modifications is to provide special protection to materialmen and laborers on construction projects to enable them to learn exactly how much money will be made available to the owner of the real estate for the project so as to permit potential subcontractors to determine the ability of the general contractor to pay for supplies and services. *Nanuet National Bank v. Eckerson Terrace, Inc.,* 47 N.Y.2d 243, 247–48, 417 N.Y.S.2d 901, 391 N.E.2d 983 (1979); *HNC Realty Co. v. Bay View Towers Apartments, Inc.,* 64 A.D.2d 417, 409 N.Y. S.2d 774 (App.Div.2d Dept.1978); *Yankee Bank for Finance & Savings v. Task Assoc., Inc.,* 731 F.Supp. 64 (N.D.N.Y.1990). A failure to comply with the filing requirements results in a change in the priority of the liens, because Section 22 of the New York Lien Law expressly provides that if the filing requirements are not met, the mechanics' liens will take priority over the interest of the party holding the building loan mortgage.

In the instant case, the defendant Banks filed the Building Loan Agreement and Building Loan Mortgage and Security Agreement. However, the debtor did not obtain any payment bond because it was not required to secure a payment bond to protect the owner's equity. The debtor is not the owner of the real estate on which the construction project was located. The debtor acted as the agent for S & H Grossinger, Inc., the owner of the real estate. The owner, as principal, did not require that its agent obtain a payment bond for the principal's protection.

The ordinary situation in which performance or payment bonds are used is one in which the owner of the property hires a general contractor for the construction, who in turn uses the services of subcontractors. The purpose of a "payment" bond in such a situation is to protect the equity of the owner in his property against the claims of unpaid subcontractors.

*HNC Realty Company v. Bay View Towers Apartments, Inc.*, 409 N.Y.S.2d at 779.

As in the *HNC Realty Co.* case, the owner of the property, S & H Grossinger, Inc., also acted as the general contractor through its agent, the debtor. However, unlike the *HNC Realty Co.* case, where the mortgagee lender expressly required that the owner was to provide surety payment bonds "covering ... subcontractors", the defendant lending Banks in the instant case did not provide in the Building Loan Agreement that the borrower was required to obtain a payment bond covering subcontractors. The Building Loan Agreement provides that the lending Banks had no obligation to make any Building Loan Advances unless certain conditions were met "to the sole and complete satisfaction of the Lenders ..." One of the conditions listed was the receipt of certain documents "duly executed by the parties thereto and in form and substance satisfactory to the lenders and their counsel in their sole discretion ..." One of the documents listed below this language was "the Bonds".

Even if the phrase "in their sole discretion" referred to the form and substance of payment bonds, rather than to the defendant Banks' right to require a payment bond as a condition precedent to their obligation to make any Building Loan Advances, the defendant Banks waived this condition when they made Building Loan Advances without first receiving from the debtor any payment bonds. There was nothing in the Building Loan Agreement that unconditionally obligated the debtor to obtain a payment bond specifically for the benefit of the owner of the premises or for the benefit of subcontractors and their suppliers and laborers. Indeed, in *HNC Realty Co. v. Bay View Towers Apartments, Inc.*, 409 N.Y.S.2d at 778, the court found that the payment bond which the owner, acting as general contractor, did obtain was for the benefit of the lending mortgagee only and that no mechanics' lienors had any right to bring any action on the bond. This failure to comply with the building loan contract was found to be an unfiled, material modification of the building loan agreement, which resulted in elevating the priority of the subcontractors' mechanics' liens. The failure to protect the interests of the mechanics' lienors was regarded as a substantial modification because the original building loan agreement specifically required the general contractor-owner to obtain "a surety bond guaranteeing that the principal faithfully pay its subcontractors and materialmen funds due from the principal for work performed and materials furnished, as said work or materials have been approved by the obligee, with the funds disbursed by the obligee to the principal for this purpose." *supra* at 777. In light of this language, the *HNC Realty Co.* court concluded that the building loan contract very clearly mandated the general contractor-owner to provide surety payment bonds covering the subcontractors. *supra* at 779.

Similarly, in *Yankee Bank for Finance & Savings v. Task Associates, Inc.*, 731 F.Supp. at 70, which cited the *HNC Realty* case with approval, the court sustained the magistrate's finding that the building loan agreement in that case "required the developers to provide a surety payment bond for the protection of the subcontractors." Because the requirement for a surety bond in the building loan agreement was not obtained for the benefit of the subcontractors, the court held that the foreclosing mortgagees' advances without a filed modification agreement violated Section 22 of the New York Lien Law and subordinated the plaintiff's mortgage to the interests of the mechanic's lienor defendants.

In the instant case, there is no language in the Building Loan Agreement executed by the parties and on file in the Sullivan County Clerk's office that expressly requires the debtor to obtain a surety payment bond for the benefit of subcontrac-

tors at the Grossinger project. Manifestly, the owner principal did not require its agent, the debtor, to obtain a payment bond to protect its own equity interest in the real estate. Nor did the defendant Banks make advances in violation of the Building Loan Agreement because it did not unconditionally require the debtor to provide a surety payment bond for the express protection of the subcontractor plaintiffs. Therefore, the amended complaint does not allege any material modification of the Building Loan Agreement. Because there was no subsequent material modification of the Building Loan Agreement on file in the County Clerk's Office, there was no violation of Section 22 of the New York Lien Law, which requires that subsequent modifications of filed Building Loan Agreements must also be filed.

The premise on which Count I of the amended complaint is based is that if a Building Loan Agreement provides that a potential lending institution has the right to demand a payment bond before the lender advances money to a general contractor of a construction project in exchange for receiving a mortgage lien on the real estate at the project, any failure of the lending mortgagee to require a payment bond from the general contractor before the mortgagee advanced money for the project would constitute a subsequent material modification of the Building Loan Agreement. According to Count I of the amended complaint, this subsequent material modification would occur even if the lending mortgagee and the owner whose property would be encumbered by unpaid mechanics' liens, chose not to require the posting of a payment bond before advances were made by the mortgagee lender.

Thus, as expressed in Count I of the amended complaint, if the parties to the Building Loan and Mortgage Agreement did not file with the County Clerk where the project was located, a document that the lending mortgagee chose not to require the posting of a payment bond before advancing loans to the project and obtaining a mortgage lien for such advances, the lending mortgagee would be penalized under Section 22 of the New York Lien Law because the mortgage lien securing such advances would be subordinated to subsequently filed, unpaid mechanics' liens against the owner of the real estate where the construction project was located.

In sum, the plaintiff's theory in Count I is that the defendant mortgagee had no right to make Building Loan advances unless the debtor obtained a payment bond, even though the Building Loan Agreement did not say that a payment bond was mandated before the mortgagee defendant could make any advances and that the defendant mortgagee could not, in its discretion, make Building Loan advances without first requiring the posting of a payment bond. This tortured interpretation of the Building Loan and Mortgage Security Agreement is contrary to its clear language. The obtaining of a payment bond by the debtor was not required by the defendant mortgagee before it was obligated to make advances to the debtor secured by the Building Loan and Mortgage Agreement. The defendant mortgagee was simply not obligated to make any Building Loan advances if it chose first to require a payment bond from the debtor as a condition to making any such advances. The defendant mortgagee had no interest in protecting the real estate from being encumbered by mechanics' liens filed by subcontractors of the general contractor debtor. Therefore, if the mortgagee defendant and the owner of the real estate chose not to require a payment bond as a condition precedent to Building Loan advances made by the defendant mortgagee, this election permitted under the Building Loan and Mortgage Agreement did not constitute a subsequent material modification which had to be filed under Section 22 of the New York Lien Law. Therefore, the failure to file a modification document with the County Clerk's office where the construction project was located did not result in subordinating the defendant mortgagee's Building Mortgage lien to the interests of the mechanics' liens held by the plaintiffs because no subsequent material modification of the Building Loan and Mortgage Agreement ever occurred.

There is no law requiring that every Building Loan Agreement must unconditionally obligate a general contractor to obtain a payment bond, even if the lending mortgagee and the owner of the construction project provide that such payment bond is a condition which the lending mortgagee may require, but which is not unconditionally mandated before the lending mortgagee may make Building Loan advances secured by its mortgage. Conversely, if a Building Loan and Security Agreement permits, as in this case, the mortgagee defendant to make advances to the general contractor owner of the project without requiring the general contractor owner to obtain a payment bond, any such advances would not constitute a material modification of the Agreement.

Accordingly, Count I of the amended complaint fails to state a claim for which relief can be granted, and will be dismissed.

Count III of the amended complaint relates to the defendants' alleged violation of Article 3–A of the New York Lien Law by diverting trust funds. Article 3–A of the New York Lien Law provides in relevant part in Section 70(1) that trust funds received "by a contractor ... or received by a subcontractor under or with a subcontractor made with the contractor for ... public improvement of real property ... shall constitute assets of a trust for the purpose provided in section Seventy-on of this Chapter." One of the purposes specified in Section 71 involves the "payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen." The purpose of these provisions is to safeguard rights of persons participating in construction projects requiring that contractors and subcontractors act as the fiduciary manager of the fixed amounts provided for construction operations. *Ingalls Iron Works Co. v. Fehlhaber Corp.*, 337 F.Supp. 1085 (S.D.N.Y.1972); *Harman v. Fairview Associates*, 25 N.Y.2d 101, 302 N.Y.S.2d 791, 250 N.E.2d 209 (1969); *In re Grosso*, 9 B.R. 815 (Bankr.N.D.N.Y.1981). The funds received by the contractor or subcontractor may be commingled with their general funds, but must first be applied to the payment of the statutory suppliers, laborers and materialmen beneficiaries. *Aquilino v. United States*, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961).

In Count III of the amended complaint, the plaintiffs seek an accounting for trust funds which the defendant banks advanced to the debtor under the Loan Agreements, but which were allegedly diverted by the debtor for nontrust purposes, in violation of the defendant banks' obligation to supervise the distribution and application of the proceeds pursuant to the Loan Agreements. There is no question that any subcontractor who has not been paid trust fund monies advanced for the purpose of paying costs and improvements under construction contracts covered by Article 3–A of the New York Lien Law has a right to hold the trustee transferror accountable for improper diversion of trust funds. *See Aquilino v. United States*, 10 N.Y.2d at 276, 219 N.Y.S.2d 254, 176 N.E.2d 826. However, a transferee of diverted trust funds can also be held liable for the funds if the transferee had actual or constructive notice not only that the funds were the subject of a trust, but also that they were transferred in breach of the trustee's duty. *Gramatan–Sullivan, Inc. v. Koscow*, 143 F.Supp. 641, 646 (S.D.N.Y. 1956), *aff'd*, 240 F.2d 523 (2d Cir.1957), *cert. denied*, 353 U.S. 958, 77 S.Ct. 864, 1 L.Ed.2d 909 (1956).

However, Count III of the amended complaint does not allege that the defendant banks are either trustees under Article 3–A of the New York Lien Law or that they are transferees of trust funds. Indeed, Count III alleges that the defendant banks were transferrors, or lenders of funds to be applied for trust purposes and not the recipients of such funds.

In *United Lakeland Air Conditioning Co., Inc. v. Ahneman–Christiansen, Inc.*, 33 Misc.2d 606, 226 N.Y.S.2d 532 (Sup.Ct. Nassau County 1962), *aff'd*, 18 A.D.2d 1022, 239 N.Y.S.2d 38 (2nd Dept.1963), upon which the plaintiffs rely, the mortgagee bank "retained" certain trust funds on deposit so that these funds had not been

technically "advanced" by the bank. The court would have required the bank to account for the improperly retained trust funds, but for the fact that the complaint did not allege that the bank had notice of the plaintiff's outstanding trust claims. Moreover, the court found that the entire fund on deposit was ultimately used to improve the construction project and that the plaintiffs were not damaged by any improper diversion. This case is completely inapposite to the instant case, where the defendant banks are not claimed to have retained any trust funds and are neither the trustees nor the transferees of trust funds within the meaning of Article 3–A of the New York Lien Law.

Count III of the amended complaint fails to allege any fiduciary relationship between the plaintiffs and the defendant banks, as required under Article 3–A of the New York Lien Law. Therefore, Count III must be dismissed because it fails to state a claim for which relief can be granted.

 Count IV of the amended complaint alleges that the plaintiffs are the third-party beneficiaries of the improvements made by the plaintiffs, which increased the value of the real estate covered by the defendant banks' Building Loan Mortgage. This claim might have some significance if the defendant banks failed to comply with Section 22 of the New York Lien Law and advanced Building Loan proceeds under a building loan contract which mandated that the contractor must obtain a payment bond before the lending mortgagees could advance funds for a construction contract. Moreover, Count IV might also have significance if the defendant banks occupied a fiduciary relationship to the plaintiffs under Article 3–A of the New York Lien Law, which they breached. However, in view of the fact that the allegations contained in Counts I and III must be dismissed for failing to state claims for which relief can be granted, it follows that an allegation as to a third-party beneficiary status must also be dismissed because it fails to allege any breach of contract or duty to the plaintiffs for which the defendant banks can be liable for the relief claimed in the amended complaint.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(K).

2. The plaintiffs have not alleged any claims in Counts I, III and IV of the amended complaint for which relief can be granted.

3. The defendants' motion to dismiss counts I, III and IV of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated in Bankruptcy Rule 7012 is granted.

4. Count V was voluntarily withdrawn by the plaintiffs.

SETTLE ORDER ON NOTICE.