**IVERSEN BAKING COMPANY, INC. and David C. Collins**

v.

**WESTON FOODS, LTD. and George Weston, Inc.**

Civ. A. No. 94–1148.

United States District Court, E.D. Pennsylvania.

Jan. 25, 1995.

Kenneth H. Zucker, Ari Goldberger, Pepper, Hamilton & Scheetz, Philadelphia, PA, for plaintiffs.

Patrick J. Corcoran, Kathleen M. Comfrey, Shearman & Sterling, New York City, Ian Meklinsky, William A. Whiteside, Jr., Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

Today we consider Defendants' Motion for Summary Judgment on their Counterclaim and Plaintiffs' Amended Complaint.[1] The litigation arises out of events occurring between 1991 and 1994. In early 1991, Iversen Baking Company entered into a Services Agreement with Weston.[2] According to the terms of the contract, the parties agreed that Iversen would "lease" its President, David Collins, to Weston for two years to act as the president of Stroehmann Bakeries, Inc., a Weston subsidiary. Under the terms of the Services Agreement, Iversen was to supply Collins as an independent contractor on an exclusive basis to Stroehmann; in exchange for Collins's services, Weston was to pay Iversen a flat fee every month.

At the same time the parties entered into the Services Agreement, they also signed a Stock Agreement. This contract required Weston to purchase a certain amount of Iversen stock, which it did. The contract also provided that upon a certain event, Iversen would be obligated to repurchase the stock from Weston at the original sales price.

In 1992, Weston and Collins signed a Long Term Compensation Agreement (LTC Agreement) which, in consideration for Collins's continued employment and services to Stroehmann, provided for additional compensation based on Stroehmann's income over a five year period. The LTC Agreement contains an arbitration clause as well as a clause captioned "Termination." Much of the current litigation concerns those two clauses.

### Summary Judgment Standard

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that

a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

### Legal Analysis

#### 1. Counterclaim

Plaintiffs have admitted liability under Defendants' counterclaim. Accordingly, summary judgment will be granted on the claim. Plaintiffs, however, argue that any amounts it owes should be set-off against amounts due to it from Defendants. This question will be reserved for trial or for more complete briefing by the parties.

#### 2. LTC Agreement's Arbitration Clause

 Defendants' first, and overarching, argument is that any claims based on the LTC Agreement are barred because of the arbitration clause within the contract. The arbitration clause states:

> The exclusive forum for any dispute, controversy, or claim arising out of or relating to any provision of this Agreement, including termination of the Agreement, shall be by arbitration....

By its terms, the LTC Agreement is governed by Pennsylvania law, and it is to that law that we turn to determine the validity of the arbitration clause. Pennsylvania encour-

---

1. Plaintiffs have voluntarily withdrawn Count IV.

2. Weston Foods, Inc. and George Weston, Inc. were both involved in the transactions at issue in this litigation. We will refer to them as Weston unless a further distinction is necessary.

ages arbitration and upholds agreements to arbitrate. 42 Pa.Cons.Stat.Ann. § 7303 (1982); *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 662, 331 A.2d 184, 185 (1975). A court's inquiry when faced with an arbitration clause is limited to determining "whether an agreement to arbitrate was entered. into and whether the dispute involved falls within the scope of the arbitration provision." *Id.* at 663, 331 A.2d at 185. If the court determines that arbitration is appropriate, the arbitrators resolve any defenses to arbitration, such as the timeliness of the request or fraud in the inducement. In *Flightways Corp.*, the Pennsylvania Supreme Court refused to hear plaintiff's argument that the arbitration agreement was void because the contract was fraudulently induced and instead held that the issue was one for the arbitrators. *Id.*, 331 A.2d at 185–86.

The LTC Agreement's arbitration clause clearly demonstrates that an agreement to arbitrate was made. The clause provides that arbitration is the "exclusive forum" to resolve disputes. It also demonstrates that the scope of arbitration is not limited in any way; it covers "any dispute, controversy, or claim arising out of or relating to any provision of the Agreement *including* termination of the Agreement." (emphasis added) Accordingly, we find that arbitration is the exclusive forum for any claims resulting from the LTC Agreement.

■ Here, both parties devote many pages of their memoranda to the question of whether the arbitration request was timely made or whether arbitration was waived by defendants.[3] We will not reach these issues because of our finding that the arbitration agreement exists and covers this dispute. *Samuel J. Marranca Gen. Contracting Co. v.*

*Amerimar Cherry Hill Assoc. Ltd. Partnership*, 416 Pa.Super. 45, 610 A.2d 499 (1992); *Ambridge Borough Water Auth. v. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974). We also do not make any findings or judgments as to whether arbitration is a possibility now. That finding is left to the arbitrators.

As a result of this holding, we hereby grant summary judgment on Counts V and VI in their entirety, as they state causes of action solely regarding the LTC Agreement. We grant summary judgment on Count I only insofar as it states a cause of action relating to the LTC Agreement. Any aspect of Count I relating to the Services Agreement is properly before this Court.

### 3. Counts I and II: Breach of Contract under the Services Agreement

Counts I and II both state breach of contract claims against Defendants. These claims are based on the termination of the Services Agreement in November, 1993.

### A. Extension of the Services Agreement

■ The Services Agreement provides that it shall be in effect:

for a period of 2 years time (the "Term") which shall commence on January 3, 1991 (the "Effective Date") and shall continue for a period of 2 year's [sic] unless sooner terminated pursuant to Paragraph 5 hereof; provided that on the first anniversary and each subsequent anniversary of the Effective Date, the original term of this Agreement may be extended for one additional year, unless not later than 31 days prior to the anniversary of the Effective Date, [Iversen] provides [Stroehmann] or [Stroehmann] provides [Iversen] with writ-

---

3. Plaintiffs argue that Defendants waived their right to arbitration when they refused to voluntarily comply on the ground that the demand for arbitration was not timely. In support of this argument, Plaintiffs cite *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assoc. Ltd. Partnership*, 416 Pa.Super. 45, 610 A.2d 499 (1992). This case holds that when a party avails itself of the court system and fails to assert a right to arbitration as an affirmative defense to the complaint, the party can be said to have waived the right to later demand arbitra-

tion. *Id.* at 49, 610 A.2d at 502. That is not the case here, where Defendants did assert the arbitration clause as an affirmative defense to the complaint. Plaintiffs misrepresent Defendants' refusal to voluntarily submit to arbitration as a waiver of the process itself. In fact, Defendants' letter indicates that Defendants did not waive arbitration, but believed *Plaintiffs* had waived it by delay and misnaming of parties. Accordingly, we do not find that Defendants have waived the right to arbitration.

ten notice of an intent not to extend the Agreement.

Defendants' defense to the breach of the Services Contract claim is that they notified Collins and Iversen on November 5, 1993 that they would not renew the Services Agreement. According to them, therefore, the Agreement was not renewed for the following year, so no breach was possible.

Plaintiffs' argument is that on November 5, 1993, the Agreement had already been extended to January 3, 1995 and that Defendants' notification merely served to prevent the Agreement's extension to January 3, 1996. Their argument is that the clause states that on the *first* anniversary of the Effective Date, i.e., January 3, 1992, the Services Agreement's *original* term was extended for one *additional* year, i.e., from the original termination date of January 3, 1993, to January 3, 1994. Then, on the second anniversary of the Effective Date, (January 3, 1993) the Services Agreement was extended for yet another year, to January 3, 1995. More than thirty-one days before the third anniversary of the Effective Date (January 3, 1994), notice was given, and so the Services Agreement was not extended for a third additional year. We agree with Plaintiffs' construction of the Services Agreement.

Defendants wish us to construe the contract as if it read, "upon the *second* anniversary of the Effective Date, the original term of the Agreement may be extended for one additional year ..." Defendants' interpretation could also be sustained if the clause read, "upon the first anniversary of the Effective Date, the original term of the Agreement may be extended for the *next* year ... [i.e., not one *additional* year]." Neither of these readings is sustainable with the clear language of the contract. The only reasonable construction of the clause, therefore, is the construction that Plaintiffs have placed on it.

Defendants rely heavily on their argument that Plaintiffs' construction is nonsensical because Collins was only interested in a two-year commitment when Iversen entered into the Services Agreement. This argument can go nowhere, however, because of the parol evidence rule. The parol evidence rule states:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of *antecedent understandings* and negotiations will not be admitted for the purpose of varying or contradicting the writing. 3 A. Corbin, Contracts § 573 at 357 (1960) (emphasis added).

New York, whose law governs construction of the Services Agreement, uses the parol evidence rule as a substantive rule of contract law, not as a rule of evidence. *Frishberg v. Esprit De Corp,* 778 F.Supp. 793, 802 (S.D.N.Y.1991), *aff'd* 969 F.2d 1042 (2d Cir. 1992). In New York, "if a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible to vary, or permit escape from, the terms of the integrated contract." *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir.1993).

Accordingly, because the written terms of the contract are not ambiguous, and because the contract is integrated,[4] we hold that summary judgment for Defendants is improper. They have not established that, as a matter of law, Plaintiffs have no claim against them for breach of the Services Agreement.

### B. Incorporation by reference of the Services Agreement

A question that has been fully briefed by the parties at this point and that is relevant to Counts I and III is whether the LTC Agreement incorporates the Services Agreement by reference. Plaintiffs argue that it does by virtue of the LTC Agreement's declarations that it is "continuing" Collins's employment with Stroehmann, because various officials of Weston allegedly told Collins that the LTC Agreement incorporated the Services Agreement, and because the parties'

---

4. Both by virtue of its integration clause and the fact that the contract speaks to the very topic at issue. *Frishberg,* 778 F.Supp. at 802.

intent was to incorporate the Services Agreement into the LTC Agreement.

■ In New York, which state's law governs the Services Agreement, in order for an agreement to incorporate another by reference, the intent to do so must be clear.[5] This means that "the document to be incorporated be referred to and described in the contract so that the referenced document may be identified beyond doubt." *American Dredging Co. v. Plaza Petro.*, 799 F.Supp. 1335 (E.D.N.Y.1992), *vacated in part, on other grounds,* 845 F.Supp. 91 (E.D.N.Y.1993) (citing *Chiacchia v. National Westminster Bank,* 124 A.D.2d 626, 507 N.Y.S.2d 888 (1986)).

The LTC Agreement in no way refers to the Services Agreement. Although it may be argued that the LTC Agreement's terms concede the existence of some other agreement by using the word "continuing;" this hypothetical other agreement is not sufficiently described so that it may be "identified beyond doubt." Similarly, use of the word "continuing" does not create an ambiguity that parol evidence is needed to explain. We hold, therefore, as a matter of law, that the LTC Agreement does not incorporate the Services Agreement.

### C. Count II: Collins as Third–Party Beneficiary

■ Count II alleges that Collins is a third-party beneficiary to the Services Agreement, and that he therefore has a cause of action under it. Defendants argue that Collins is not a third-party beneficiary and so summary judgment should be granted on this claim.

New York has adopted § 302 of the Restatement (Second) of Contracts. This section provides two means by which a nonparty to a contract can acquire rights under the contract as a third-party beneficiary. The first is "if the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." The second is if "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Septembertide Publ. v. Stein & Day, Inc.,* 884 F.2d 675, 679 (2d Cir.1989). The intention of the parties is the key to this determination. *HNC Realty Co. v. Bay View Towers Aparts.,* 64 A.D.2d 417, 409 N.Y.S.2d 774, 779 (1978). This intent, however, need not be expressly stated in the contract. *Vista Co. v. Columbia Pictures Indus.,* 725 F.Supp. 1286, 1296 (S.D.N.Y.1989) (quoting *United States v. Ogden Tech. Labs., Inc.,* 406 F.Supp. 1090, 1092 (E.D.N.Y.1973)).

Here, all parties agree that if Collins is an intended third-party beneficiary to the Services Agreement, it must be under the second method, because there are no allegations that he was due any money from Iversen, the promisee. Defendants argue that the contract "conclusively establishes" that Collins is not a third-party beneficiary, because all payments were to go directly to Iversen with no provision for a further disbursement to Collins. Moreover, the Services Agreement includes a provision that states "this Agreement shall not constitute a contract between [Weston] and [Collins] or consideration for, any inducement to or condition of, the employment of [Collins]." Although Defendants apparently wish to rely solely on the contract's terms to resolve this dispute, the parol evidence rule does not apply here, because the parties are not trying to vary or contradict the terms of the contract. *Yanakas,* 7 F.3d at 315.

Plaintiffs argue that the circumstances indicate that Collins was an intended third-party beneficiary of the Services Agreement. They point to the fact that Collins was the president of Iversen and signed the contract for Iversen, that he was initially contacted directly to leave Iversen for Weston, but arranged the transaction in this form in order to take advantage of Iversen's favorable tax status. Most importantly, Plaintiffs point

---

**5.** Although the parties delegated interpretation of the LTC Agreement to arbitrators, we note that in Pennsylvania, one contract can incorporate the other by reference, even when the parties are different, if the contracts were executed at the same time and are intertwined by the same subject matter. *Kroblin Refrigerated Xpress v. Pitterich,* 805 F.2d 96, 107 (3d Cir.1986). This is not the case here, where the LTC Agreement and the Services Agreement were executed over a year apart and are not intertwined by the same subject matter.

to the fact that Collins is directly named in the Services Agreement as the employee who will be "leased" to Weston.

Taking Plaintiffs' allegations as true, we find that the language of the Services Agreement combined with the circumstances surrounding the negotiations demonstrate that there is a genuine issue of material fact as to whether Collins was intended as a third-party beneficiary to the Services Agreement. Accordingly, summary judgment on this aspect of Count II is denied.

### 4. Count III: Promissory Estoppel

■ Plaintiffs have pleaded promissory estoppel alternatively to their breach of contract claims (Counts I and II). They and Defendants agree that in Pennsylvania, a promissory estoppel claim can only exist in the absence of a contract. Courts have held that breach of contract and promissory estoppel may be pleaded in the alternative, but that if the court finds that a contract exists, the promissory estoppel claim must fall. *Carlson v. Arnot–Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir.1990); *Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F.Supp. 1038, 1043 (E.D.Pa.1994); *United States v. Kensington Hosp.*, 760 F.Supp. 1120, 1135 (E.D.Pa.1991) (unjust enrichment).

Here, none of the parties argue that the contracts at issue, the Services Agreement or the LTC Agreement, are invalid. In their memorandum of law, Plaintiffs argue that the promissory estoppel claim is brought in the alternative in case this Court determines that the LTC Agreement did not incorporate the Services Agreement. We have so found. They argue that promissory estoppel is the only remedy for the breach of the alleged oral promises to hire Collins for an extra five years. This, however, ignores the fact that this Court has found valid contracts and the parties agree that the Services Agreement is a valid contract.

■ Promissory estoppel is an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing. The Amended Complaint plainly states that Count III is brought as an "alternative to Counts I and II." We have already held those Counts survive the motion for summary judgment. Accordingly, summary judgment is appropriate for the promissory estoppel claims. *Kensington Hosp.*, 760 F.Supp. at 1135 (Court did not dismiss alternative claims, but if "appropriate, defendants may raise the issue later as a motion for summary judgment").

An appropriate Order follows.

### ORDER

AND NOW, this 25th day of January, 1995, upon consideration of Defendants' Motion for Summary Judgment on their Counterclaim and Plaintiffs' Amended Complaint and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART. Summary Judgment is hereby GRANTED on Defendants' Counterclaim and Plaintiffs' Counts III, V and VI in their entirety, and on Count I insofar as it states a cause of action under the Long Term Compensation Agreement. Summary Judgment is DENIED as to Counts I and II insofar as they state causes of action under the Services Agreement.